FRANK et al. v. BERNARD.

(Circuit Court of Appeals, Second Circuit. February 14, 1911.)

Nos. 196, 197.

PATENTS (§ 324*)—SUIT FOR INFRINGEMENT—PUNISHMENT FOR VIOLATION OF INJUNCTION—REVIEW.

An order imposing a fine on a defendant for violation of an injunction restraining infringement of a patent, based on findings made by a master after a full hearing, confirmed by the court, will not be disturbed by an appellate court, where it is supported by sufficient findings.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 324.*]

Appeals from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by Leo Frank and Israel De Keyser against William Bernard. Decree for complainants, and defendant appeals. Affirmed.

Appeal No. 196 is from an order entered July 26, 1909, confirming the report of the special master to whom it was referred to ascertain the extent of the defendant's violations of the injunction issued July 25, 1904, and imposing a fine of $1,200 upon the defendant for contempt of court.

Appeal No. 197 is from the final decree entered March 14, 1910, which is quoted in the opinion contemporaneously rendered in appeal No. 132. 185 Fed. 810. The appeal involves a review of the order of July 26, 1909, which is specifically covered by appeal No. 196. Appeal No. 197 also seeks to review an order entered June 5, 1906, in which a fine of $10 was imposed upon the defendant for selling a single match stand in violation of the injunction. Prior decisions are reported as follows: Frank v. Bernard (principal suit) 131 Fed. 269, affirmed 135 Fed. 1021, 68 C. C. A. 566; also 146 Fed. 137; 171 Fed. 117; 179 Fed. 516, 101 C. C. A. 459. Numerous decisions have been made which are not reported.

H. D. Williams, for appellant.
O. Ellery Edwards, Jr., for appellees.

Before COXE, WARD, and NOYES, Circuit Judges.

COXE, Circuit Judge (after stating the facts as above). This controversy has occupied the attention of the courts for more than seven years and has been before this court on three final hearings. It never should have arisen at all, but having arisen, two fair-minded, intelligent men should have had no difficulty in settling it forthwith. The rights of the respective parties were so plain that it seems amazing that their initial misunderstanding should have been allowed to drift into a bitter personal quarrel in which both sides have resorted to harsh and oppressive measures and have wasted their resources in unnecessary litigation.

We cannot avoid the conclusion, after reading these records, that the defendant has been pursued with unnecessary severity and yet it must be admitted that he alone is responsible for what has occurred. As is evident from the printed brief submitted by him in person, he is a man of more than ordinary intelligence and, at the present time, at least, has a clear appreciation of the rights and obligations imposed by the patent law. He and the complainants were partners in business until January, 1899, the patent in suit being one of the assets of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

partnership. He must have been thoroughly familiar with its terms for it was issued to him as assignee of the inventors. He received from the complainants $6,250 for his patent and interest in the copartnership. What then was his duty? Clearly he should have accepted the settlement in good faith. Instead of doing so, he began making infringing articles. There can be no question on this point for the Circuit Court found that he had adopted the "identical construction" of the patent. If he did not know it before, he certainly knew the moment the decision of the Circuit Court was filed that he was precluded from questioning the validity of the patent and that he could not make and sell articles having the features of the second claim. Instead of discontinuing the sale of infringing articles, he started out to avoid infringement by slight changes in construction, which would hardly be noticed by the ordinary purchaser. In a strict legal sense he had a right to avoid the claim if he could do so, but he had no right to make the devices which, prior to the assignment of his patent, he sold as embodying the patented features. In other words, he could not receive money for the exclusive right to use the patent and continue to use it himself.

Even upon his own theory, the goods he sold so closely resembled the patented articles that a few taps of a hammer on one side of the groove would convert them into infringements. The claim in controversy is as follows:

"As a new article of manufacture, a match safe, or similar article, having a groove formed in its base in which is inserted non-scratching material with its lower edge projecting below the surface of the base, said material being secured in place by forcing one side of the groove toward the opposite side to pinch the material, substantially as specified."

The defendant seeks, by an appeal to the file wrapper and the prior art, so to limit this claim as to render it practically worthless. It is contended that a structure literally within the claim does not infringe if the leather be inserted and pinched by the undercut wall after the wall has been constructed. But the claim is for a new article, not a method of construction and we do not think an interpretation should be placed upon it which enables one who makes the article to escape because he does not follow the precise order of construction recommended by the patentee. It is enough that he makes and sells the precise thing.

The defendant's conceded course was so close to contributory, if not actual, infringement that it was certain to excite the resentment of the complainants, who supposed that they had bought and paid for the exclusive right to make and sell the articles which the defendant was selling.

In June, 1906, a motion was made to punish the defendant for contempt. At the hearing one of the exhibits was clearly shown to be an infringement, but as the defendant insisted that this violation of the injunction was accidental, a nominal fine of $10 only was imposed. It is now asserted that the exhibit has been hammered so that for a short space the edges appear to be turned in. Regarding this exhibit the Circuit Judge says:

"Mere inspection of the article will show that the top of the inner wall is inclined *sufficiently towards the top of the opposite wall to pinch the leather* ring."

This is clearly so and we can see no evidence of hammering which could produce this result. There are some marks on the outer wall, but why they were made and when, or who made them, does not appear.

In September, 1906, a master was appointed to take testimony and report as to the extent of any violation by the defendant of the injunction. A large amount of testimony was taken and on February 6, 1909, the master filed his report, holding that some of the articles sold by the defendant violated the terms of the injunction and that others did not.

Exceptions were filed and the entire matter was argued, reargued and carefully considered by Judge Hough before he made the order of July 26, 1909. In fact, it would be difficult to imagine a case which from beginning to end has received such patient and careful attention. The facts upon which the contempt proceedings are based have been examined over and over again in the Circuit Court. Notwithstanding this, we are asked by the defendant to give him another opportunity to offer testimony to prove that the methods followed and tools used by him cannot produce an infringing structure and that the exhibits offered by the complainants have been tampered with and falsified. Of course this cannot be done. The defendant had ample notice of the charges made against him and full opportunity, both by affidavit, and orally, before the master, to offer any proof in his possession to substantiate his accusations. The master found nine instances of violation of the injunction and the Circuit Court agreed with and confirmed his findings. This court is compelled in such matters to rely upon findings of fact made in the court below and especially so when its officers have had the advantage of seeing and hearing the witnesses. There is nothing in the record to warrant us in reversing the order of July 26th.

The amount of the fine, $1,200, is not exorbitant when we consider the expense to which the complainants have been subjected by reason of the defendant's infringements. The amount of the fine was certainly well within the discretion of the court.

The decree and order appealed from are affirmed with costs.